IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GAS PIPE, INC. (7)<br>AMY LYNN, INC. (8)<br>GERALD SHULTS (9)<br>AMY HERRIG (10)<br>RAPIDS CAMP LODGE, INC. (31)<br>RIDGLEA COMPLEX MANAGEMENT, INC. (32) | Criminal No. 3:14-CR-298-M |

## GOVERNMENT'S RESPONSE TO THE DEFENDANTS' MOTION TO COMPEL THE GOVERNMENT TO COMPLY WITH ITS OWN POLICIES AND PAY THE STATE AND LOCAL TAXES ON PROPERTY IT SEEKS TO FORFEIT

The defendants' motion to compel is devoid of merit. The premise of their motion relies on a gross misreading of the Department of Justice's Asset Forfeiture Policy Manual. As a result, the defendants' motion should be denied. In support of this response, the government states the following:

### I. Background

On June 4, 2014, the government executed approximately 15 search warrants in the Northern, Eastern, and Western Districts of Texas and the District of New Mexico. These search warrants were based on numerous federal crimes allegedly committed by Gerald Shults and Amy Lynn Herrig, including conspiracy to possess with intent to distribute controlled substances, money laundering, mail fraud, wire fraud, and

misbranding of drugs.[1] In addition, the government executed over 35 seizure warrants for property, including U.S. currency, funds in financial accounts, vehicles, airplanes, and a boat, involved in the offenses and owned or controlled by Shults and Herrig.[2]

On June 5, 2014, the government filed a forfeiture complaint against numerous pieces of real estate owned or controlled by the defendants (Cause No. 3:14-CV-2047-P), but amended that complaint in September 2014 to include the U.S. currency, funds in

---

[1] From at least March 1, 2011, Lawrence Shahwan's Drug Trafficking Organization (Shahwan DTO), the Gas Pipe Drug Trafficking Organization (Gas Pipe DTO), and others, devised and implemented a scheme to defraud the Food and Drug Administration and ultimately the general public in order to obtain money by materially false and fraudulent pretenses and representations. The essence of the scheme involved the Gas Pipe DTO contracting with the Shahwan DTO, and others, to purchase synthetic cannabinoid based products that were ultimately marketed and labeled as "incense," "potpourri," "100% synthetic cannabinoid free," and/or "not for human consumption." Regardless of what the products were called, the Gas Pipe DTO and its suppliers intended the products to be smoked and ingested as a drug in order for the user to get "high."

After the DEA successfully dismantled the Shahwan DTO, the Gas Pipe DTO expanded its operations and constructed a manufacturing room at their central office location in order to manufacture their own "spice" blends. Throughout the length of this conspiracy, the Gas Pipe DTO sold synthetic drugs, which were fraudulently mislabeled and contained the synthetic cannabinoids AM-2201, UR-144, XLR-11, AB-FUBINACA, 5F-PB-22, FUB-PB-22, JWH-250, and THJ-2201. These substances were distributed on multiple occasions when they were either Schedule I controlled substances or considered controlled substance analogues of Schedule I controlled substances.

The Gas Pipe DTO's profits from the sale of mislabeled/misbranded synthetic cannabinoids were in the millions. Over time, the Gas Pipe DTO developed a scheme in which they funneled and transferred their ill-gotten gains through various accounts with Wells Fargo and UBS Financial Services and ultimately purchased and/or funded assets such as real estate, hunting/fishing businesses, aircrafts, and fishing vessels. Throughout this conspiracy, the Gas Pipe DTO utilized 13 Gas Pipe retail locations to distribute millions of dollars in illegal products.

[2] The defendants seem to exaggerate how financially incapacitated they were following the June 2014 seizures. The government assisted attorney Frank Shor, counsel for Shults and the entities at the time, with obtaining the release of tens of thousands of dollars that had been frozen by UBS that were not subject to the government's seizure warrants. Furthermore, the defendants' financial situation was such that they were not only able to maintain each of their 13 stores, but they opened a fourteenth store after June 2014.

**Response to Defendants' Motion to Compel – Page 2 of 9**

financial accounts, vehicles, airplanes, and the boat seized in June 2014.[3] The government's amended forfeiture complaint alleges that the real and personal property are criminal proceeds or were involved in money laundering. The defendants have filed claims to some of the property listed in the forfeiture complaint, as well as answered the complaint.

On March 20, 2015, the defendants filed a motion in the civil forfeiture case seeking the return of funds seized in June 2014, which were included in the government's forfeiture complaint, arguing that the money was needed to pay their property tax and federal income tax obligations and that government policy dictates such action. The Court has yet to rule on the defendants' motion.

On May 6, 2015, a federal grand jury returned a superseding indictment in this case charging the defendants with Conspiracy to Defraud the United States (18 U.S.C. § 371), Conspiracy to Distribute a Controlled Substance and Controlled Substance Analogues (21 U.S.C. § 846); Maintaining a Drug Involved Premise and Aiding and Abetting (21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2), Importation of a Controlled Substance Analogue and Aiding and Abetting (21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2), and Conspiracy to Commit Money Laundering (18 U.S.C. § 1956(h)). In addition, the superseding indictment provided notice of 72 specific items of property (both real and

---

[3] The government's verified complaint for forfeiture *in rem* contained numerous assets for which Gerald Shults and his entities have not asserted a claim against. Therefore, for purposes of simplicity, the government has only made reference to property that is associated with Gerald Shults and/or his entities

**Response to Defendants' Motion to Compel – Page 3 of 9**

personal) that the government was seeking to forfeit should the defendants be found guilty in this case.

Since the government's investigation became known to the defendants in June 2014, by the execution of search/seizure warrants, the defendants have maintained custody, care, and control of the all of the real property that has been included in either the civil forfeiture case or the criminal case pending before this court.

## II. Argument and Analysis

The defendants' argument is confusing and rather contradicting.  On one hand they argue they are no longer obligated to pay their property taxes because the government has filed a civil forfeiture case and included the property in the forfeiture notice of the criminal indictment.  However, instead of taking that position with the taxing authorities, the defendants are seeking this Court to compel the government to pay their property taxes, even though the defendants concede the government is immune from paying such taxes.  The crux of the defendants' argument is based on a misinterpretation and application of the government's Asset Forfeiture Manual.

The government's refusal to agree to the defendants' request is completely consistent with its national forfeiture policy, and the government has in no way "voluntarily" abrogated its undisputed immunity from being taxed by state and local taxing authorities.  The basis of the defendants' argument is their misguided reliance on

---

(Gas Pipe, Inc.; Amy Lynn, Inc.; and Ridglea Complex Management, Inc.)

**Response to Defendants' Motion to Compel – Page 4 of 9**

Section III of Chapter Five of the Justice Department's Asset Forfeiture Policy Manual, entitled "Use and Disposition of *Seized and Forfeited* Property" (emphasis added). The defendants point to a portion of Section Three which states, "[I]t is the policy of the Department of Justice that the United States should pay state and local real property taxes that accrue up the date of the entry of an order or judgment of forfeiture." *Asset Forfeiture Policy Manual* (2013), Chap. 5, Sec. III.A.

The Manual snippet cited by the defendants does not apply to their situation, because the real property at issue in the forfeiture complaint has neither been seized nor forfeited by the government. In fact, the government is generally prohibited from seizing real property in a civil forfeiture action until entry of an order of forfeiture. 18 U.S.C. § 985(b)(1). While the government did seize hundreds of pounds of synthetic cannabinoids (known as "spice") from the businesses searched in June 2014, the real estate comprising those business locations has not been seized. And, while the government did file *lis pendens* on the real property in order to make its forfeiture interest in the property known, the filing of a *lis pendens* shall not be considered a seizure, according to 18 U.S.C. § 985(b)(2). A *lis pendens* is nothing more than written notice, filed with the county clerk, that a lawsuit has been filed and alerts any potential purchasers or lenders that the property's title is in question. Once the notice is filed, the property is still free to be sold or transferred; however, any new purchaser takes possession of the property subject to the ultimate decision of the lawsuit.

**Response to Defendants' Motion to Compel – Page 5 of 9**

Legally, the government does not own any of the real property in this case, and will not until it proves its right to forfeiture in court.  To require the government to pay the property taxes for real property that is not, nor has ever been, in the care, custody, or control of the United States and is merely subject to forfeiture in a pending lawsuit, defies logic.

Further, the defendants cannot use the Justice Department's policies to shirk their responsibility to pay their "fair share."  The foreword of the Department of Justice's Asset Forfeiture Policy Manual (the writing cited by the defendants) specifically states the following:

> "The *Asset Forfeiture Policy Manual* sets forth the policies of the Asset Forfeiture and Money Laundering Section.  It does not, however, create or confer any legal rights, privileges, or benefits that may be enforced in any way by private parties.  *See United States v. Caceres*, 440 U.S. 741 (1979)."

Clearly, by its own terms, the Asset Forfeiture Policy Manual does not shift the burden to pay taxes from the defendants to the government.  Instead, the Manual guides Department of Justice employees in how to utilize the various forfeiture laws already in place, as well as establishes internal safeguards to help prevent the government from losing money in forfeiture actions.   Courts from all across the country have issued opinions reiterating that Department of Justice policy directives are not binding and do not create privately enforceable rights. *See United States v. One Star Class Sloop Sailboat*, 546 F.3d 26, 36 (1st Cir. 2008) (holding that Claimant "failed to explain how or

why the Department of Justice's internal guidelines regarding the interlocutory sale of assets give rise to a private right or action enforceable in the federal courts."); *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005) ("Department of Justice guidelines and policies do not create enforceable rights for criminal defendants"); *United States v. $110,873.00 in U.S. Currency*, 159 Fed. App. 649, 653 (6th Cir. 2005) (collecting cases to show that DOJ policy directives are not binding and do not create privately enforceable rights); *United States v. Arango v. United States Department of Treasury*, 115 F.3d 922, 927 (11th Cir. 1997); *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990) ("the internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party"); *United States v. Busher*, 817 F.2d 1409, 1411 (9th Cir. 1987) (holding that defendant was not entitled to rely on United States Attorneys' guidelines where manual stated it did not create any rights enforceable at law by any party); and *United States v. Nelligan*, 573 F.2d 251, 255 (5th Cir. 1978) ("this court has recognized that Petite is an internal policy of self-restraint that should not be enforced against the government")

    The defendants curiously assert the *Accardi* doctrine as the basis to force the government to pay their property taxes. Assuming that the Asset Forfeiture Manual applies to the defendants' situation (which the government does not believe is the case), the *Accardi* doctrine is inapplicable to this situation because the defendants have failed to articulate that they have reasonably relied upon the Asset Forfeiture Manual for guidance

and have suffered because of any alleged violation of policy by the U.S. Attorney's Office. *United States v. Caceres*, 440 U.S. 741, 752-753 (1979). Nor will they ever be able to articulate this because they have taken the position that they are not obligated to pay their property taxes due to the government's pending civil and criminal cases involving the property.

### III. Conclusion

Based on the foregoing, the defendants' motion to compel should be denied.

Respectfully submitted,

JOHN R. PARKER
United States Attorney

/s/ Brian D. Poe
BRIAN D. POE
Assistant United States Attorney
Northern District of Texas
Texas State Bar No. 24056908
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone:   817.252.5447
Facsimile:   817.252.5455
Email:   brian.poe@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on December 29, 2015, I electronically filed the foregoing document with the clerk for the United States District Court for the Northern District of Texas pursuant to its electronic filing system (ECF).  The ECF sent a "Notice of Electronic Filing" to the defendants' attorneys who have consented to accepting service via this method.

      /s/ Brian D. Poe
BRIAN D. POE
Assistant United States Attorney